IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APS TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1166 (MN) |
| | ) | |
| VERTEX DOWNHOLE, INC. and | ) | |
| VERTEX DOWNHOLE, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

At Wilmington this 29th day of July 2020:

As announced at the hearing on July 23, 2020, IT IS HEREBY ORDERED that Defendants Vertex Downhole, Inc. and Vertex Downhole, Ltd.'s (collectively, "Defendants") Motion to Dismiss (D.I. 14) is DENIED.

Defendants moved to dismiss the First Amended Complaint (D.I. 16) pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that claims 2-6 of U.S. Patent No. 6,714,138 ("the '138 Patent") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101. In their motion, Defendants also seek dismissal of Plaintiff's allegations of direct, indirect and willful infringement under Rule 12(b)(6) as insufficiently pled under *Iqbal* / *Twombly*. Defendants' motion was fully briefed as of November 13, 2019 (*see* D.I. 20, 21 & 22), and the Court received further submissions regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendants' motion as related to the § 101 arguments (*see* D.I. 46 & 47). The Court carefully reviewed all submissions in connection with Defendants' motion, heard oral argument on July 23, 2020 and applied the following legal standards in reaching its decision:

# I.    LEGAL STANDARDS

## A.    Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008).  "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification."  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)).  Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## B.    Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent.  35 U.S.C. § 101.  The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101:  laws of nature, physical phenomena, and abstract ideas.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  These three exceptions "are 'the basic tools of scientific and

technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216.  A claim to any one of these three categories is directed to ineligible subject matter under § 101.  "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78.  First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts.  *Alice*, 573 U.S. at 217.  If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).  If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

1.    Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject

matter).  In performing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature.  *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).  "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'"  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2.      Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more."  *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312.  This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact.  *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101."  *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB,

2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

      C.    <u>Pleading Direct Infringement</u>

Liability for direct infringement arises under 35 U.S.C. § 271(a) when a party, without authorization, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent."  The activities set forth in § 271(a) do not result in direct infringement unless the accused product embodies the complete patented invention.  *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 & n.2 (Fed. Cir. 2000).  Therefore, to state a claim of direct infringement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s).  *See TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018).

The Federal Circuit recently provided guidance on pleading direct infringement under *Iqbal / Twombly*.  *See generally Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018).  In *Disc Disease*, the Federal Circuit reversed the district court's dismissal of plaintiff's direct infringement claims, finding that the plaintiff's allegations were sufficient under the plausibility standard of *Iqbal* and *Twombly* because the complaint specifically identified the three accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents, either literally or equivalently.  *Disc Disease*, 888 F.3d at 1260.  Following *Disc Disease*, another court in this District similarly found that a plaintiff plausibly pleaded an infringement claim where the complaint specifically identified the infringing product and alleged "that it practices each limitation of at least one claim in" the relevant patents.  *Promos*

*Tech., Inc. v. Samsung Elec. Co.*, No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018); *see also AgroFresh Inc. v. Hazel Techs., Inc.*, No. 18-1486-MN, 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) (applying *Disc Disease* to find allegations of direct infringement sufficiently pled); *DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-98-MN, 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018) (same).[1]

      D.      <u>Pleading Induced and Contributory Infringement</u>

      Induced infringement under § 271(b) requires that "the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). To give rise to inducement liability, the accused infringer must know that the induced acts constitute infringement of another's patent. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Therefore, to state a claim of inducement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly support an inference that the accused inducer "specifically intended [another] to infringe the [patent] and knew that the [induced] acts constituted infringement." *Bill of Lading*, 681 F.3d at 1339. A plaintiff must also plead facts that support an inference that an underlying act of direct infringement has occurred. *See id.* at 1336; *see also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement.").

      To state a claim for contributory infringement, a plaintiff must plausibly allege that "a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing

---

[1]      The legal standard for direct infringement set forth in this Memorandum Order is derived from the Court's opinions in *DoDots* and *AgroFresh*.

uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *Bill of Lading*, 681 F.3d at 1337 (quoting 35 U.S.C. § 271(c)).  As with inducement, contributory infringement requires that the accused infringer know of the patent and its direct infringement.  *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).  To sufficiently state a claim for contributory infringement, a plaintiff must also "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."  *Bill of Lading*, 681 F.3d at 133.

      E.    <u>Pleading Willful Infringement</u>

In the context of willful infringement, the Federal Circuit recently explained that a finding of willfulness requires "no more than deliberate or intentional infringement."  *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (quoting *Halo Elecs. v. Pulse Elecs., Inc.*, — U.S. —, 136 S. Ct. 1923, 1934 (2016)).  Therefore, to state a claim of willful infringement to withstand a motion to dismiss, a plaintiff must plausibly allege that the accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent and its infringement.  *See, e.g.*, *NNCrystal US Corp. v. Nanosys, Inc.*, No. 19-1307-RGA, 2020 WL 616307, at *4 (D. Del. Feb. 10, 2020) ("To plead a claim of willful infringement, the complaint must allege that the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge." (citing *Eko*, 946 F.3d at 1367)).

## II.    <u>THE COURT'S RULING</u>

The ruling to deny Defendants' motion to dismiss under Rule 12(b)(6) was announced from the bench at the conclusion of the hearing as follows:

> . . . I am prepared to rule on the pending motions.  I will not be issuing a written opinion, but I will issue an order stating my rulings.  As I have done in other cases, before I get to the rulings, I want to emphasize that although I am not issuing a written opinion, we have

followed a full and thorough process before making the decision I am about to state. There was briefing on the pending motion, there were some additional submissions, including those discussing what was viewed as the most analogous case, and there has been oral argument here today. All of the submissions and the arguments have been carefully considered.

Now as to my ruling. I am not going to read into the record my understanding of Section 101 law or the applicable pleading standards. I have a legal standard section that I have included in earlier opinions, including in *Innovative Global Systems, LLC v. Keep Truckin, Inc.*, C.A. No. 19-641. I incorporate that law and adopt it into my ruling today and I will also set it out in the order that I issue.

There is one patent at issue – U.S. Patent No. 6,714,138, which generally relates to methods and apparatuses for sending information between the surface and a location below ground (*i.e.*, in a well) using pulses. The only claims asserted in this litigation are method claims 2 through 6.

Defendants have moved to dismiss pursuant to Rule 12(b)(6), arguing that the asserted claims are directed to patent-ineligible subject matter. Defendants have also moved to dismiss for failure to state a claim for direct infringement, indirect infringement and willful infringement. After reviewing the entire record, hearing argument, and applying the law as I understand it, I am going to deny the motion.

First, I want to address the 101 issues and the representativeness of the claims discussed.

Defendants treat claim 2 as representative of the five asserted claims and explained how the asserted claims are all directed to the same invention.

[Claim 2 of the '138 Patent recites:

2. A method for transmitting information from a portion of a drill string operating at a down hole location in a well bore to a location proximate the surface of the earth, a drilling fluid flowing through said drill string, comprising the steps of:

a) generating pressure pulses in the drilling fluid at said down hole location that propagate to said surface location, said pressure pulses

8

being encoded with said information to be transmitted;

b) controlling at least one characteristic of said generated pressure pulses in situ at said down hole location; and

c) transmitting instructional information from said surface location to said down hole location for controlling said pressure pulse characteristic, and wherein the step of controlling said pressure pulse characteristic comprises controlling said characteristic based upon said transmitted instruction.]

In Plaintiff's brief, it disputed that claim 2 is representative of claims 3 through 6, but did not really articulate why it is not. And here today, Plaintiff initially conceded that claim 2 is representative of claims 3 through 6, but then argued that claims 3 and 4 were not ineligible even if claim 2 were, again without much explanation.

Here, I agree with Defendants as to the representativeness of claim 2. Although it may be Defendants' burden to show invalidity for each claim, the Court does not understand Federal Circuit precedent to suggest that Plaintiff can simply say it does not agree as to representativeness and refuse to provide any "meaningful argument" for why the rest of the claims are not fairly represented by the claim identified by Defendants.[2] That being said, however, given my ruling that claim 2 is not ineligible [on the current record], I don't think representativeness is really in question.

Next, I turn to Step 1 of *Alice*. Defendants say claim 2 is directed to the abstract idea of "data transmission,"[3] whereas Plaintiff argues that it is directed to a "specific mud pulse telemetry system used in drilling" that uses "concrete, tangible elements" such as the drill string and drilling fluid to control the pressure pulses that

---

[2]    *See, e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

[3]    (D.I. 20 at 5).

convey information at a downhole location.[4]  Plaintiff also asserts that claim 2 is to an "improvement to mud telemetry systems."[5]

I am struggling here as to whether the claims are directed to an abstract idea or instead to improvements in a particular method of communicating information about a drilling process and using that to control the operation using wireless mud telemetry, which may fall into the category of technological improvement as was the case in *Enfish*, *Core Wireless*, *Data Engines* and other similar cases. This struggle is exacerbated by the broad abstract idea advanced by Defendants – *i.e.*, simply "data transmission."

I take Defendants' point that the claims focus on data transmission, and that that transmission is claimed using largely functional limitations.  The Federal Circuit has emphasized that functional limitations can suggest that a claim is directed to an abstract idea when these limitations show that the focus of the claim is merely a result instead of how to achieve that result.[6]

That being said, I tend to agree with Plaintiff that Defendants have oversimplified the claim to an improper level of abstraction. Plaintiff notes that the prior art systems were unable to achieve *in situ* control of the pressure pulses, instead relying on a cessation of the drilling process and manual adjustment by a worker.[7]  This manual adjustment was often necessary in the prior art systems because information transmission becomes more difficult as the drilling process progresses to distances farther from the surface – *e.g.*, attenuation of the pulses as distance increases and interference signals from the drilling process, to name a few.[8]  These assertions find support in the background portion of the specification.  And the purportedly inventive solution to this problem is using the mud pulse telemetry itself to transmit information to control the pressure pulses *in situ*, instead of stopping the process as was the case previously. This *in situ* control is arguably captured by steps (b) and (c) in claim 2.  Although I have some concerns about this claim being framed in terms of functional language without any indication of

---

4       (D.I. 21 at 11-12).

5       (D.I. 21 at 6).

6       *See e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO*, 837 F.3d at 1314; *Affinity Labs*, 838 F.3d at 1258.

7       (D.I. 21 at 6 & 9; *see also* '138 Patent at 3:24-63).

8       ('138 Patent at 3:24-41).

how to achieve that *in situ* control, I cannot conclude at this stage that the claim is directed to an abstract idea – more particularly to the abstract idea articulated by Defendants – instead of some improvement in a specific mud telemetry and drilling process.

Thus, when the claims are considered as a whole and based on the current record, the Court cannot agree with Defendants that the claims are directed to the abstract idea asserted. It may be, however, that further proceedings and a more developed record lends clarity to this issue. I will thus follow the approach of Judge Bryson in a similar situation while he was sitting by designation in *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.* in the Eastern District of Texas[9] and deny the motion to dismiss. And in doing so, I am denying the motion with leave to renew it at summary judgment to the extent that there are no factual issues precluding that.

And just to be complete, given that Defendants have not persuaded me on the current record that the claims are directed to the abstract idea of data transmission, I need not address Step 2 of the *Alice / Mayo* analysis here.[10]

Next, I turn to the arguments that the pleading fails to meet the pleading standards of *Iqbal* and *Twombly*.

As previously noted, Defendants move to dismiss claims of direct, indirect and willful infringement as to claim 2, the only asserted claim called out in the First Amended Complaint. The other asserted claims all depend on claim 2.

Initially I note that in their papers, Defendants also argued that the First Amended Complaint fails to plausibly allege infringement of any claim of the '138 Patent apart from claims 2 through 6, but this issue has been resolved by Plaintiff's representation on the July 15, 2020 teleconference in which Plaintiff stated that it would not be asserting any claims other than claims 2 through 6 in this case. So I will address the arguments on pleading sufficiency only in the context of claims 2 through 6 of the '138 Patent, all of which are method claims.

---

9   *IDB Ventures, LLC v. Charlotte Russe Holdings, Inc.*, No. 2:17-660-WCB-RSP, 2018 WL 5634231, at *5 (E.D. Tex. Oct. 31, 2018).

10   *See Core Wireless*, 880 F.3d at 1363.

Plaintiff accuses Defendants' Mudlink MWD Kit (a product) of infringing the asserted claims.[11]

As to direct infringement, Defendants argue that they cannot be liable for direct infringement of claim 2 based on the manufacture, sale, offer for sale or importation of the accused Mudlink Kit because claim 2 is a method claim that requires performance of each and every step of the claimed method (*i.e.*, "use" under § 271(a)). I agree, and based on the argument today, so does Plaintiff. Now, I note that Plaintiff's First Amended Complaint is somewhat sloppy in that it uses the highly disfavored "and/or" language, asserting that Defendants "have directly infringed and continue to directly infringe under 35 U.S.C. § 271(a) one or more claims of the '138 Patent either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States the Accused Products and Services that infringe one or more claims of the '138 Patent."[12] This language makes it unclear what activity under § 271(a) is actually accused of infringement. But based on the argument today, I understand that only use is being asserted. To the extent any other actions are asserted, they are dismissed.

Defendants further argue that there are insufficient allegations that Defendants actually perform each and every step of the claimed method with the Mudlink Kit, which is required to give rise to a claim of direct infringement.[13]

As to this issue, Plaintiff alleges that Defendants' salespeople and technical representatives "troubleshoot the Kit at oil field drilling sites" both during and after installation.[14] A plausible inference from this is that Defendants have "used" the Mudlink Kit at least in a testing capacity, thereby resulting in performance of each step of the claimed method.

Thus, I find that Plaintiff has met the relatively low threshold for pleading direct infringement under *Disc Disease* as it relates to allegations of "use" within the meaning of § 271(a).

---

[11]   (*See, e.g.*, D.I. 16 ¶¶ 13-15).

[12]   (D.I. 16 ¶ 30).

[13]   (D.I. 20 at 13-15).

[14]   (D.I. 16 ¶ 22).

As to induced infringement, Defendants argue that Plaintiff has not sufficiently identified the underlying act of direct infringement – *i.e.*, who the third-party user is and how their use of the Mudlink Kit causes transmission of information from surface to downhole – and Defendants also argue that Plaintiff fails to adequately allege specific intent to encourage another's infringement, which is required for inducement.[15]

I disagree. Although Plaintiff does not have to identify who the third-party users are, Plaintiff does allege that Defendants' customers use the Mudlink Kit in an infringing manner and, further, Plaintiff identifies Halliburton as a customer of Defendants.[16]

As to adequately alleging Defendants' specific intent to induce infringement, I note that Defendants received notice of the allegation of infringement from the original complaint – and the pre-suit letter – yet continued their marketing, instruction and technical support activities. One plausible inference from this is that Defendants specifically intend to induce customers to infringe the '138 Patent. Indeed, this Court and other courts in this District have found a specific intent to induce to be sufficiently pleaded where a plaintiff alleges that the defendant continues marketing the accused products despite receiving notice of an asserted patent and its purported infringement from an earlier pleading.[17]

Next, we have contributory infringement. Defendants argue that Plaintiff has not alleged "no substantial noninfringing uses" with sufficient factual matter to render that allegation plausible. The Court generally agrees, however, with Plaintiff that this element of contributory infringement may in some instances be plausibly alleged by affirmatively pleading that there are no such noninfringing uses when that allegation is not undermined by the rest of the pleading at issue. Although during the argument Defendants argued that the Mudlink Job Report 2, which does not specifically mention downlinking, undermines the assertion of no

---

[15] (D.I. 20 at 15-18).

[16] (*See, e.g.*, D.I. 16 ¶¶ 19, 31 & 37-39).

[17] *See DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-098 (MN), 2019 WL 3069773 (D. Del. July 12, 2019); *see also ReefEdge Networks, LLC v. Juniper Networks, Inc.*, 29 F. Supp. 3d 455, 460 (D. Del. 2014) ("ReefEdge's allegations of Juniper's marketing activities and instructions to customers to use the accused products in an infringing manner, even after Juniper had actual notice of the alleged infringement by specific accused products as a result of the filing of the original complaint, pleads specific intent to induce infringement with sufficient particularity.").

noninfringing alternatives, I cannot conclude on the record before me that that is the case.

Finally, we have willful infringement.  Defendants argue that Plaintiff is required to allege facts that support a finding of "culpability and egregiousness."  Here, Plaintiff alleges – with factual support – that it sent Defendants a letter prior to this lawsuit which stated Plaintiff's belief that the Mudlink Kit infringed the '138 Patent.[18]

Defendants responded to that letter, denying infringement and alleging the '138 Patent was invalid.[19]  In the Court's view, these allegations plausibly suggest that Defendants had the requisite knowledge of infringement to support a claim of willful infringement.

I disagree with Defendants that Plaintiff is required to also plausibly plead acts of egregiousness, which is a necessary element to enhancement of damages under *Halo*.  Willful infringement and enhancement flowing from that willfulness are separate inquiries.  Indeed, in *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,[20] the Federal Circuit found that a jury instruction defining willful infringement as being reserved for the most egregious behavior was erroneous because it conflated the willfulness inquiry with the enhancement inquiry, the latter of which is for the Court to decide.   The Federal Circuit explained that, "[u]nder *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement."[21]  In the Court's view, that the Federal Circuit does not require egregiousness for a jury finding of willful infringement suggests that pleading egregiousness is not necessary to state a claim for willfulness.[22]

Plaintiff has plausibly alleged that Defendants continued their purported infringement after receiving a letter from Plaintiff

---

[18]   (D.I. 16 ¶¶ 26-27).

[19]   (D.I. 16 ¶ 28).

[20]   946 F.3d 1367 (Fed. Cir. 2020).

[21]   *Eko*, 946 F.3d at 1378.

[22]   *See NNCrystal US Corp. v. Nanosys, Inc.*, No. 19-1307-RGA, 2020 WL 616307, at *4 (D. Del. Feb. 10, 2020) ("To plead a claim of willful infringement, the complaint must allege that the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge.").

outlining how Defendants infringed the '138 Patent, and a plausible inference from the continued activity is that it was intentional or deliberate, thereby giving rise to a plausible claim of willful infringement.

[I]n sum, although the pleading is no model of clarity, the Court finds that Plaintiff has plausibly alleged direct, indirect and willful infringement under the standards of *Iqbal* and *Twombly*. That being said, to the extent there are claims of direct infringement based on anything other than Defendants' use of the accused Mudlink Kit or claims of joint infringement, which I have been told are not asserted yet in this case, but to the extent that there was any argument that they were, those are dismissed.

The Honorable Maryellen Noreika
United States District Judge

15